# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC FORSYTHE, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 04cv10584 (GAO) |
| Plaintiff, | |
| vs. | |
| SUN LIFE FINANCIAL INC., et al., | |
| Defendants. | |

| | |
|---|---|
| LARRY R. EDDINGS, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 04cv10764 (GAO) |
| Plaintiff, | |
| vs. | |
| SUN LIFE FINANCIAL INC., et al., | |
| Defendants. | |

| | |
|---|---|
| RICHARD KOSLOW, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 04cv11019 (GAO) |
| Plaintiff, | |
| vs. | |
| SUN LIFE FINANCIAL INC., et al., | |
| Defendants. | |

**[caption continues on next page]**

# REPLY BRIEF IN SUPPORT OF THE *FORSYTHE* AND *EDDINGS* PLAINTIFFS' MOTION FOR CONSOLIDATION, APPOINTMENT OF CO-LEAD PLAINTIFFS, APPOINTMENT OF CO-LEAD COUNSEL, AND APPOINTMENT OF LIAISON COUNSEL

MARCUS DUMOND, HENRY BERDAT,
STUART V. And ROSEMARY STURGESS,
KATHLEEN BLAIR, WILLIAM And MARGIE
BOOTH, KAREN PEACH, And RICHARD And
EVELYN KELLER,

                Plaintiffs,

        vs.

MASSACHUSETTS FINANCIAL SERVICES
COMPANY And MFS FUND DISTRIBUTORS,
INC.,

                Defendants.

Civil Action No. 04cv11458 (GAO)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................ 5

      POINT I        THERE ARE NO DISABLING CONFLICTS BECAUSE THE
                              MFS FUNDS ARE NOT NAMED AS DEFENDANTS IN THE
                              MARKET-TIMING CASE........................................................................ 5

      POINT II      THE *FORSYTHE* PLAINTIFFS MAY BRING BOTH  CLASS
                              AND DERIVATIVE CLAIMS IN THIS LITIGATION........................... 6

      POINT III     THE *FORSYTHE* PLAINTIFFS, INCLUDING CHICAGO,
                              HAVE STANDING ON BEHALF OF ALL FUNDS............................... 9

      POINT IV     THERE ARE COMMON QUESTIONS OF LAW AND FACT
                              PENDING BEFORE THE COURT MAKING
                              CONSOLIDATION APPROPRIATE...................................................... 16

CONCLUSION.................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page**

### CASES

*Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198 (D. Mass. 2002)...12, 13

*Bertozzi v. King Louie Int'l, Inc.*, 420 F. Supp. 1166 (D.R.I. 1976) ...................................7

*Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106 (5th Cir. 1991).............................5

*In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64 (D. Conn. 1994) ..................................15

*Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984).......................................................10

*Dandorph v. Fahnestock & Co.*, 462 F. Supp. 961 (D. Conn. 1979) ................................11

*De Allaume v. Perales*, 110 F.R.D. 299 (S.D.N.Y. 1986) .................................................12

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2000 U.S.
Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000)............................................................14

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, MDL-1466, Civ. No. H-01-
3625, 2004 U.S. Dist. LEXIS 8158 (S.D. Tex. Feb. 24, 2004) ............................11, 12

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)...................................13

*Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir. 1993) .............................................13

*Golden Trade S.R.L. v. Lee Apparel Co.*, 90 Civ. 6291, 90 Civ. 6292, 90 Civ.
7815, 92 Civ. 1667, 1997 U.S. Dist. LEXIS 8924 (S.D.N.Y. June 24, 1997)............19

*In re Great Lakes Dredge & Dock Co.*, 895 F. Supp. 604 (S.D.N.Y. 1995) .....................19

*Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486 (N.D. Ill. 1999)...................................10

*Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083 (3d Cir. 1975) ..........................................12

*Hawk Industries, Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619 (S.D.N.Y. 1973)...............7

*Heilbrunn v. Hanover Equities Corp.*, 259 F. Supp. 936 (S.D.N.Y. 1966) ........................7

*Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071  2003 U.S. Dist. LEXIS 11972
(S.D.N.Y. July 16, 2003) ...........................................................................................15

*Jenstad v. Crystal Specialties, Inc.*, Civ. No. 89-574-FR, 1991 U.S. Dist. LEXIS 5034 (D. Or. Apr. 15, 1991)..................................................................5

*Kamen v. Kemper Fin. Servs.*, 500 U.S. 90 (1991)............................................10

*Krantz v. Fidelity Mgmt. & Research Co.*, 98 F. Supp. 2d 150 (D. Mass. 2000) (emphasis added) ........................................................................10

*Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581 (W.D. Tex. 2002)...........................8

*La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973)................12

*Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51 (S.D.N.Y. 1993)...............15

*Moore v. Comfed Sav. Bank*, 908 F.2d 834 (11th Cir. 1990)..............................14

*Nenni v. Dean Witter Reynolds, Inc.*, Civ. No. 98-12454-REK, 1999 U.S. Dist. LEXIS 23351 (D. Mass. Sept. 29, 1999) ....................................................15

*Newport Ltd. v. Sears, Roebuck & Co.*, Civ. No. 86-2319, 1995 U.S. Dist. LEXIS 7652 (E.D. La. May 26, 1995)........................................................5

*Olesh v. Dreyfus Corp.*, No.  1995 WL 500491 (E.D.N.Y. Aug. 8, 1995)......................11

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)..............................7

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) ...................................12

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995)................15

*Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196 (S.D.N.Y. 1991) ........................15

*Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93 (S.D.N.Y. 1972) .............................7

*Spira v. Nick*, 876 F. Supp. 553 (S.D.N.Y. 1995)................................................15

*Storlazzi v. Bakey*, 894 F. Supp. 494 (D. Mass. 1995)........................................17

*Storlazzi v. Bakey*, No. 95-1596, 1995 U.S. App. LEXIS 30146 (1st Cir. Oct. 24, 1995) .......................................................................16

*Tannenbaum v. Zeller*, 552 F.2d 102 (2d Cir. 1977) ..........................................14

*United States v. Certain Land*, 214 F. Supp. 148 (M.D. Ala. 1963)....................5

*Weiner v. Winters*, 50 F.R.D. 306 (S.D.N.Y. 1970) ...........................................11

## DOCKETED CASES

*Koslow v. Sun Life Financial Inc., et. al.*, No. 04 cv 11019 (GAO) (D. Mass. filed
   May 20, 2004)...........................................................................................................1

*Dumond, et. al. v. Massachusetts Financial Services Company, et. al.*, No. 04 cv
   11458 (RGS) .........................................................................................................1

## STATUTES

15 U.S.C. § 80a-35(b) ....................................................................................................9, 10

Fed. R. Civ. Proc. 42(a) ...................................................................................................15

## PRELIMINARY STATEMENT

Plaintiffs Eric Forsythe ("Forsythe"), Larry R. Eddings ("Eddings") and the City of Chicago Deferred Compensation Plan ("Chicago") (collectively the "*Forsythe* Plaintiffs") hereby submit their Reply Brief in Support of the *Forsythe* and *Eddings* Plaintiffs' Motion for Consolidation , For Appointment of Co-Lead Plaintiffs, Appointment of Co-Lead Counsel, and Appointment of Liaison Counsel.[1] On September 29, 2004, counsel for the plaintiffs in the *Dumond* action submitted a Memorandum in Opposition to Amended Motions for Consolidation and for Appointment of Tri-Lead Counsel (hereinafter referred to as the "*Dumond* Memo"). They continue to argue that the *Dumond* case should not be consolidated with the *Forsythe* Plaintiffs' cases because counsel for the *Forsythe* Plaintiffs, which now includes proposed co-lead counsel Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz"), have disqualifying conflicts of interest as a result of their having named the MFS Funds as defendants in the MDL market-timing cases in the District of Maryland.  The *Dumond* Plaintiffs' counsel also continue to argue that the *Forsythe* Plaintiffs lack derivative standing to sue on behalf of the majority of the 112 MFS mutual funds named in their suit; and that their claims are allegedly

---

[1]     Plaintiffs Forsythe and Eddings filed in this Court the original motion for consolidation of their two actions on May 14, 2004.  On July 12, 2004, Forsythe and Eddings filed with this Court a Notice of Subsequently Filed Cases Subject to Motion for Consolidation and Submission of Revised [Proposed] Order, which requested the further consolidation of two subsequently-filed actions, *Koslow v. Sun Life Financial Inc., et. al.*, No. 04 cv 11019 (GAO) (D. Mass. filed May 20, 2004) and *Dumond, et. al. v. Massachusetts Financial Services Company, et. al.*, No. 04 cv 11458 (RGS) (D. Mass.) (transferred from the Middle District of Florida, Tampa Division on July 1, 2004).  Koslow has since agreed to the consolidation of all of the above-captioned actions and joins in the amended motion for consolidation and the motion for the appointment of Co-Lead Plaintiffs, appointment of Co-Lead Counsel and appointment of Liaison Counsel.  On July 21, 2004, the *Dumond* Plaintiffs filed their Opposition to Motions for Consolidation and for Appointment of Co-Lead Counsel.  On September 15, 2004, the *Forsythe* Plaintiffs filed their Amended Motion for Appointment of Co-Lead Plaintiffs, Appointment of Co-Lead Counsel and Appointment of Liaison Counsel and for Leave to File a Reply Regarding Consolidation (the "Amended Motion"). At the September 20, 2004 hearing, this Court granted the *Forsythe* Plaintiffs leave to file this Reply to the *Dumond* Plaintiffs' expected opposition to the amended motion.

substantially different from the claims asserted by the *Forsythe* Plaintiffs. [2]  As such, the

*Dumond* Plaintiffs do not argue that the *Forsythe* Plaintiffs' counsel should not be lead class

counsel .  Instead, they argue that the *Forsythe* Plaintiffs can only assert class claims and the

*Dumond* Plaintiffs and their counsel will assert the Section 36(b) claim solely against the 11

Funds held by the *Dumond* Plaintiffs.  All of these contentions are erroneous.

First, in the time since the *Dumond* Plaintiffs submitted their original opposition to

consolidation and the recent *Dumond* Memo and appeared before this Court on September 20,

2004, a consolidated amended complaint was filed on September 29, 2004 in the market-timing

case and the MFS Funds were not named as defendants.  As such, the fundamental factual

underpinning of the *Dumond* Plaintiffs' entire opposition now is rendered ***incorrect***.  There is no

conflict of interest because the MFS Funds are ***not*** named as defendants in the MFS market-

timing case.  This change of facts affects not only the *Dumond* Plaintiffs' legal argument, but

also the Affidavits of Professor Robert H. Aronson.  Aronson incorrectly assumes in his

affidavits that the MFS Funds ***are*** named as defendants in the market-timing case, which leads to

the erroneous conclusion that the *Forsythe* Plaintiffs' Counsel is trying to sue and represent the

Funds at the same time.  However, since the MFS Funds are ***not*** being sued in the market-timing

case, the entire supposed "conflict" argument collapses.  Indeed, because the Aronson Affidavits

are now based on a faulty assumption, they should be stricken from the record.[3]

---

[2]     The *Dumond* Plaintiffs make no argument that the *Forsythe* Plaintiffs' counsel can not represent the class in this action.  The *Dumond* Plaintiffs' conflict argument solely relates to the derivative claims.

[3]     The *Forsythe* Plaintiffs anticipate that the *Dumond* Plaintiffs will now withdraw the Aronson Affidavits on the grounds that their fundamental factual predicate is erroneous.  If they do not, and if they argue somehow that despite this factual error, the Aronson Affidavits show a disabling conflict, the *Forsythe* Plaintiffs may request leave to provide the Court with a responsive expert affidavit and/or seek the deposition of Aronson.

Although the *Dumond* Plaintiffs attempt to cast aspersions on the *Forsythe* Plaintiffs' counsel, their latest memorandum offers no new arguments on why their derivative claims against 11 of 112 Funds should be carved out of an obviously appropriate consolidated litigation that seeks to bring comprehensive derivative claims on behalf of all 112 Funds and class claims. As the *Forsythe* Plaintiffs have already set forth in their prior submissions, they can represent both class and derivative claims in this action.  There are **no** claims asserted against the Funds in this action or the market-timing actions, and the class and derivative claims are simply alternative theories pursuant to which the *Forsythe* Plaintiffs seek to obtain the maximum relief for the maximum number of current and former shareholders from common wrongdoers who have control of the Funds and were responsible for the wrongdoing across all of the Funds.  The class and derivative claims are thus consistent and compatible and the *Forsythe* Plaintiffs' proposed Co-Lead Counsel can pursue both of them.  Courts have routinely held that there is not a *per se* conflict of interest even where a class suit is brought against the same company that is represented in a derivative claim in the same action.  Here, there is no such conflict and the *Forsythe* Plaintiffs' counsel have shown that the class and derivative actions are based upon proof of the same nucleus of facts and they have the ability to attack all fronts with equal vigor.

All the Funds work together as one unitary organization and Defendants are juridically linked.  As a result, the *Forsythe* Plaintiffs have derivative standing with respect to all of the Funds.  Finally, Milberg Weiss, Weiss & Yourman, and Bernstein Litowitz have substantial experience in the prosecution of class and derivative actions, and have the resources necessary to efficiently conduct this litigation.  All three firms are also well-qualified to act as Co-Lead Counsel by virtue of their track record in the area of class and derivative litigation.  The *Dumond* Plaintiffs' *ad hominem* attacks on Bernstein Litowitz are unwarranted.  Bernstein Litowitz is a

well-respected firm and is more than capable of serving as a lead counsel in this action. In addition, Chicago, which had invested a substantial amount in MFS Funds, is ideally suited to be a lead plaintiff. The *Dumond* Plaintiffs do not even address Chicago's substantial investment. As Chicago does not have a conflict (nor does anyone else) because the Funds are not defendants in the market-timing case, the *Dumond* Plaintiffs offer no adequate reason why Chicago can not serve as a lead plaintiff.

In short, the *Dumond* Plaintiffs and their counsel, seek to carve out a leadership position for themselves for only 11 Funds while leaving the remaining Funds without derivative representation. They misleadingly attempt to differentiate their claims from the claims in the *Forsythe* Plaintiffs' complaints when they know full well that the claims and underlying facts are essentially identical in all the cases. It makes no sense for the *Dumond* counsel to prosecute identical derivative claims for only 11 Funds when counsel for the *Forsythe* Plaintiffs have agreed to consolidation and a leadership structure across all of the Funds -- the more efficient and effective way to prosecute these cases. Indeed, even though consolidation would have been appropriate anyway, inasmusch as the supposed "conflict" argument has collapsed, *Dumond* should be consolidated into the organized structure already agreed to by all of the other plaintiffs and their counsel. As such, due to the reasons more fully stated herein, consolidation of the above-captioned actions is appropriate and will best serve the interests of judicial economy and will avoid unnecessary costs or delay.

**ARGUMENT**

**POINT I**

**THERE ARE NO DISABLING CONFLICTS BECAUSE THE MFS FUNDS
ARE NOT NAMED AS DEFENDANTS IN THE MARKET-TIMING CASE**

The *Dumond* Plaintiffs' argument that there is a disabling conflict in this litigation is

based on the factually incorrect assumption that the MFS Funds are currently named defendants

in the MDL market-timing case pending in the District of Maryland. This is categorically false.

The *Dumond* Plaintiffs' argument, in reliance on the Aronson Affidavits, is that counsel for the

*Forsythe* Plaintiffs have disqualifying conflicts because they are suing the very same MFS Funds

in the market-timing case that they simultaneously seek to represent in the derivative claims

here. *Dumond* Memo at 1-5. **However, the MFS Funds are not named as defendants in the**

**consolidated amended complaint in the market-timing case.**[4] As the *Dumond* Plaintiffs'

argument and the Aronson Affidavits are based on this factual inaccuracy, Plaintiffs submit that

Section II.A of the *Dumond* Memo and the Aronson Affidavits should be stricken from the

record.[5] In short, there is no conflict of interest and no violation of any ethical, disciplinary or

other rules.

---

[4]     On September 29, 2004, a consolidated amended complaint was filed in the District of Maryland, 04-md-15863 (JFM), concerning allegations of market-timing transactions of shares of MFS mutual funds.  (Exh. A hereto).  The amended consolidated complaint does not name any of the MFS mutual funds as defendants.  The Funds are described in the market-timing complaint as non-parties. *See* Exh. A ¶¶ 14-15.  The mention of the Funds as non-parties is to explain the structure of mutual funds and how the Defendants interact with the Funds.

[5]     *See, e.g., Newport Ltd. v. Sears, Roebuck & Co.*, Civ. No. 86-2319, 1995 U.S. Dist. LEXIS 7652, at *7 (E.D. La. May 26, 1995) (noting how "the Fifth Circuit in *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106 (5th Cir. 1991), found that an opinion which was based on critically incomplete or grossly inaccurate data was properly excluded under Fed. R. Evid. 703"); *Jenstad v. Crystal Specialties, Inc.*, Civ. No. 89-574-FR, 1991 U.S. Dist. LEXIS 5034, at *14 (D. Or. Apr. 15, 1991) (the court, in granting the motion to strike the affidavit on the grounds that it lacks the necessary factual foundation for admissibility in the context of a motion for summary judgment, explained that "[w]here affidavits of experts are based on unsupported assumptions and contain unsound extrapolations or the affiants fail to consider relevant facts, the affidavits are properly excluded from consideration on a motion for summary judgment");  *United States v. Certain Land*, 214 F. Supp. 148, 151 (M.D. Ala. 1963) (stating that "if the assumptions needed to support the opinion are not proved, or at least testified to, and are not otherwise taken to be true, the opinion is worthless").

In addition, although the *Dumond* Plaintiffs argue that the addition of Chicago as a plaintiff, and its counsel Bernstein Litowitz, "Exacerbates the conflict of interest identified in the *Dumond* Plaintiffs' Memorandum," *Dumond* Memo at 1, there obviously can be no "exacerbation" of a conflict that does not exist.  Accordingly, Chicago and Bernstein Litowitz should be added as a lead plaintiff and lead counsel, respectively.[6]

## POINT II

### THE *FORSYTHE* PLAINTIFFS MAY BRING BOTH CLASS AND DERIVATIVE CLAIMS IN THIS LITIGATION

The *Dumond* Plaintiffs cite numerous cases in support of their contention that the *Forsythe* Plaintiffs cannot simultaneously bring class and derivative claims in this litigation.  *See Dumond* Memo at 2-9.  However, all of those cases deal with lawsuits where **the companies themselves are named simultaneously as defendants in the class claims and nominal defendants in the derivative claims**, which courts have held could potentially create a conflict in certain situations.  However, because, as demonstrated above, the Funds are not named as defendants in the market-timing case, the class and derivative claims are consistent and complementary and one counsel can pursue both.  Therefore, the cases cited by the *Dumond* Plaintiffs are inapposite and their arguments are without merit.[7]

Nevertheless, even where the nominal defendants are named as defendants in class claims, which is ***not*** the situation here, courts have routinely held that there is not a *per se* conflict of interest in bringing both class and derivative claims.  *See* Memorandum of Law in

---

[6]    The *Dumond* Plaintiffs attempt to use an off-the-cuff remark by Max Berger of Bernstein Litowitz to demonstrate the supposed conflict.  Mr. Berger's out of context remark has no relevance here.

[7]    To the extent that the *Dumond* Plaintiffs are suggesting that the *Forsythe* Plaintiffs' counsel are also conflicted because they are suing the Funds in this case, that is obviously false.  The Funds are not named as defendants here.

Support of the Amended Motion at 5-8 (hereinafter referred to as the "*Forsythe* Memo"). The *Dumond* Plaintiffs' own memorandum of law demonstrates that separate derivative counsel is not necessary. Citing *Bertozzi v. King Louie Int'l, Inc.*, 420 F. Supp. 1166 (D.R.I. 1976), the *Dumond* Plaintiffs state that "the court observed that there is a distinction between those cases where counsel is seeking to represent class and derivative interests in the same case arising out of the same facts. . . ." *Dumond* Memo at 6 n.4. *Dumond* also concedes that *Heilbrunn v. Hanover Equities Corp.*, 259 F. Supp. 936 (S.D.N.Y. 1966), found that class and derivative claims could be brought together when the claims present "alternative theories for recovery presented in the same action so that "'counsel could vigorously pursue any line of evidence which would result in recovery.'" *Id.* (citing *Bertozzi*, 420 F. Supp. at 1179). *Bertozzi* and *Heilbrunn* are applicable to this case. Unlike the corporations in *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93 (S.D.N.Y. 1972) and *Hawk Industries, Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619 (S.D.N.Y. 1973), which were being represented and sued at the same time by the same counsel, the Funds on whose behalf the *Forsythe* Plaintiffs' derivative claims are brought are ***not*** being sued in the market-timing case. Instead, the class and derivative claims both seek to recover monies from the real wrongdoers – those entities and individuals who run the Funds and have fiduciary duties to protect the Funds and their shareholders. The class and derivative claims arise from the same facts because Defendants' wrongful conduct in charging excessive fees was perpetrated on all MFS Funds and all MFS Funds shareholders. Thus, far from being a conflict, the assertion of class and derivative claims against the non-Fund wrongdoers will obtain the maximum recovery for the maximum investors in the MFS Funds.

     The *Dumond* Plaintiffs' reliance on cases that had separate class and derivative counsel are inapplicable here because the MFS Funds, unlike corporations in class and derivative actions,

will not fund any settlement or judgment of this action.  Concerns of potential conflicts that may

arise where a corporation is sued in a class context and the subject of a simultaneous derivative

action are not present here.  In *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 375 (9th Cir. 1995),

the corporation did partially fund the class settlement leading to an argument that the derivative

settlement was inadequate.  Nevertheless, the Ninth Circuit affirmed the approval of the

settlement despite concerns over  "*potential conflicts*" in representing derivative plaintiffs and

class plaintiffs.  *Id.* at 378 (emphasis added).  In *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581

(W.D. Tex. 2002), at the class certification stage, which the instant actions have not yet reached,

the court found that because there were four separate class actions, for four different classes of

plaintiffs, there could be conflicts among the adverse classes.  Here, the market-timing plaintiffs

and the *Forsythe* Plaintiffs do not have adverse interests.  A recovery in either action, either

direct or derivative, redresses injuries they suffered.[8]

    The *Dumond* Plaintiffs' implication that Bernstein Litowitz was rejected as lead counsel

for the derivative claims in the market-timing case mischaracterizes the Case Management Order

No. 1 ("CMO No. 1") in the market-timing case.  The CMO No. 1 was the product of discussions

and negotiations among all plaintiffs' counsel.  The CMO No.1 was not the result of any ruling

from the MDL Maryland District Court and cannot be relied upon as authority supporting the

*Dumond* Plaintiffs' arguments.  In addition, the market-timing case is part of an MDL

proceeding that covers market-timing class and derivative (and ERISA) cases for 17 mutual fund

families.  Given the volume of cases, it is reasonable that a more complex leadership structure,

---

[8]    Because a mutual fund is a shell that has no assets other than the money belonging to the mutual fund holders, whether any monies recovered in a lawsuit are returned to the shareholders directly or to the Fund is a distinction without a difference.  Because the *Forsythe* Plaintiffs seek to bring class and derivative claims against all wrongdoers across all Funds, all current and past holders will benefit from a recovery in the case.

one that has separate class and derivative (and ERISA) counsel, was agreed upon by plaintiffs' counsel. Significantly, in the MFS market-timing case, derivative lead counsel is bringing claims on behalf of all the MFS Funds, not a limited subset like the *Dumond* Plaintiffs. The *Forsythe* Plaintiffs similarly seek the maximum recovery on behalf of all the MFS Funds unlike the *Dumond* Plaintiffs who are arguing in favor of limiting their derivative case to 11 Funds.

In short, *Dumond* seeks a limited derivative action that will leave the vast majority of the MFS Funds without recourse. The *Forsythe* Plaintiffs seek to recover for all the Funds. In addition, the *Forsythe* Plaintiffs seek the maximum recovery for the maximum investors -- past and current -- by increasing the net assets of the Funds through the derivative claims and recovering damages for the Class on the direct claims. Having these alternative theories in one case led by one Lead Counsel group allows the class and derivative claims, based on the same nucleus of facts, to be effectively and efficiently litigated. It is in the best interest of the Class and the Funds to be represented by a single counsel group in a single consolidated action.

## POINT III

### THE *FORSYTHE* PLAINTIFFS, INCLUDING CHICAGO, HAVE STANDING ON BEHALF OF ALL FUNDS

To seek control over a small portion of the wrongs committed by Defendants, the *Dumond* Plaintiffs continue to argue that the *Forsythe* Plaintiffs (including Chicago) do not have standing to sue on behalf of the entire universe of MFS Funds, but instead can sue only on behalf of the Funds they own. *Dumond* Memo at 9-10 (citing Investment Company Act §36(b)). Under the *Dumond* Plaintiffs' rationale, the derivative claims of the *Forsythe* Plaintiffs can be brought only on behalf of 9 Funds if the *Forsythe* Plaintiffs' counsel is appointed Lead Counsel and 11 Funds if the *Dumond* Plaintiffs' counsel is appointed lead counsel. These arguments fail and the *Forsythe* Plaintiffs can pursue derivative claims against all Defendants on behalf of all Funds.

Section 36(b) of the Investment Company Act gives a security holder of a registered investment company the right to bring an action against an investment adviser for breach of fiduciary duty. *See* 15 U.S.C. § 80a-35(b). The Supreme Court has held that Section 36(b) claims are "direct rather than derivative." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 108 (1991) (citing *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 540 (1984)).[9] In *Daily Income Fund*, the Supreme Court specifically held that mutual funds themselves have no cause of action under §36(b). Even though an investor's recovery of damages under §36(b) goes to the fund, only the individual investors (and the SEC) may bring claims under that statute. *Daily Income Fund*, 464 U.S. at 536.[10]

In light of such authority, there is no reason why an investor cannot bring his or her direct §36(b) claim representatively under Rule 23 on behalf of the investors in other funds who have common claims against the same Defendants. Although the *Dumond* Plaintiffs essentially argue that for each Fund there must be a corresponding plaintiff, nothing in the Investment Company Act precludes a representative action when, as here, there is a common investment adviser wrongdoer across a multitude of mutual funds where each mutual fund is making the same payments that are the source of the derivative action.

---

[9]    In *Kamen*, the Supreme Court clarified the *Daily Income Fund* holding by stating that the Court had concluded "in [*Daily Income Fund*] that a shareholder action 'on behalf of' the company under § 36(b) is direct rather than derivative…." *Kamen*, 500 U.S. at 108. *See also Krantz v. Fidelity Mgmt. & Research Co.*, 98 F. Supp. 2d 150, 157-58 (D. Mass. 2000) (stating in an individual action that "[a] shareholder has a *direct* private cause of action under § 36(b) against the investment adviser 'for breach of fiduciary duty in respect of . . . compensation paid by a fund'") (citing 15 U.S.C. § 80a-35(b)) (emphasis added).

[10]    The *Dumond* Plaintiffs' contention that *Kamen* and *Daily Income Fund* merely reflect a difference in nomenclature ignores that §36(b) still does not allow a mutual fund to bring a Section 36(b) claim. The cause of action belongs to the shareholder. This point is illustrated in a case on which *Dumond* relies. In *Green v. Nuveen Advisory Corp.*, 168 F.R.D. 486 (N.D. Ill. 1999), the plaintiffs had moved for *class* certification of their 36(b) claim, demonstrating that such claim is treated as a class (direct), not a derivative, claim. While the court held that the plaintiffs did not have standing to bring the claim other than for the funds in which they were security holders, the court gave no basis for its holding and it is therefore not persuasive. Moreover, there is no indication that the plaintiffs in *Nuveen* argued that the juridical link doctrine applied, as the *Forsythe* Plaintiffs argue below.

The *Dumond* Plaintiffs rely on traditional cases where there is a single company as the nominal defendant on whose behalf the suit is brought.  In this case, however, there are common wrongdoers across all of the Funds and all of the Funds are connected through common boards, leadership, services and shared fees and expenses. [11]  Requiring each Fund to have a shareholder plaintiff before a derivative action can be brought, particularly here where the *Dumond* Plaintiffs only seek justice for 11 of the 112 MFS Funds, results in uneven adjudication of wrongs and the potential of multiple small actions against identical defendants on identical claims.  This proposition is inefficient and unwieldy, may result in inconsistent adjudication and undercuts §36(b)'s purpose of allowing a derivative suit based on "compensation of payments paid by such registered investment company" to an investment adviser.  15 U.S.C. §80a-35(b).

Established theories in the class context are instructive and analogous.  The juridical link doctrine is an established principal of class certification under which a plaintiff may maintain suit against multiple defendants even though the plaintiff has no direct contact with one or more of those defendants.  *See, e.g., In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, MDL-1446, Civ. No. H-01-3625, 2004 U.S. Dist. LEXIS 8158, at *107-08 (S.D. Tex. Feb. 24, 2004) ("[w]here a representative plaintiff in a class action suit has itself been injured by one or more, but not by all, of named multiple defendants, some courts have recognized an exception to the general rule that each class representative must have a plausible claim against each named defendant in a class or subclass.").

---

[11]    In *Dandorph v. Fahnestock & Co*., 462 F. Supp. 961, 965 (D. Conn. 1979) and *Olesh v. Dreyfus Corp*., No. CV-94-1664 (CPS), 1995 WL 500491 (E.D.N.Y.  Aug. 8, 1995), on which *Dumond* relies, the plaintiff lacked individual standing.  There is no question that the *Forsythe* Plaintiffs have standing to bring their individual claims. *Weiner v. Winters*, 50 F.R.D. 306 (S.D.N.Y. 1970) conflicts with more recent case law in the Second Circuit that has allowed a shareholder in one mutual fund to represent shareholders in other funds.  *See, infra*, at 14-15.

"While ordinarily 'a plaintiff who has no cause of action against [a] defendant can not 'fairly and adequately protect the interests' of those who do have such causes of action,' an exception may apply to cases in which 'all defendants are *juridically related* in a manner that suggests a single resolution of the dispute would be expeditious.'" *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 205 (D. Mass. 2002) (emphasis added). The juridical link doctrine is properly applied where efficiency and expediency allow plaintiffs to join together to address **common wrongs** by a group of defendants. "The doctrine is a powerful tool that can allow a plaintiff's lawyer to force many defendants (and what might otherwise be numerous class actions) into a single lawsuit at a substantially reduced cost." *Enron*, 2004 U.S. Dist. LEXIS 8158, at *108.[12]  *See also Payton v. County of Kane*, 308 F.3d 673, 678 (7th Cir. 2002) ("if the plaintiffs as a group -- named and unnamed -- have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise juridically related in a manner that suggests a single resolution of the dispute would be expeditious, the claim can go forward") (quoting *La Mar v. H & B Novelty & Loan Co*., 489 F.2d 461 (9th Cir. 1973))*; De Allaume v. Perales*, 110 F.R.D. 299, 304 (S.D.N.Y. 1986) (finding the juridical link doctrine satisfied where "individual commissioners allegedly implemented an illegal policy which was promulgated in Administrative Directives issued by the State [Department of Social Services]").

---

[12]     The Third Circuit Court of Appeals in *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1096 (3d Cir. 1975) described the roots of the juridical link doctrine in the following terms:  "The court in *La Mar v. H & B Novelty & Loan Co.*, [489 F.2d 461 (9th Cir. 1973)] noted that there may be certain exceptions to [the rule that where no plaintiff has standing on any issue against one of multiple defendants, a suit for damages may not be maintained as a class action against that defendant].  The court properly excluded (1) situations in which the injuries are the result of 'a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury,' or (2) instances in which *all defendants are juridically related and a single disposition of the entire dispute would be expeditious.* 489 F.2d at 466."  [Emphasis added.]

The Funds in this action share juridical links because they have suffered the same harm as a result of Defendants' excessive fees that were uniformly applied across all of the MFS Funds. The common action of Defendants across all the Funds satisfies the juridical link doctrine and allows the *Forsythe* Plaintiffs to bring derivative claims on behalf of each of the 112 Funds.

The District of Massachusetts has agreed with this concept. In *Alves*, 204 F. Supp. 2d at 205, two class representatives brought an ERISA class action against five defendants. Even though neither plaintiff was ever a member of an ERISA plan that the defendants sponsored, the District of Massachusetts concluded that "plaintiffs' claims against [defendants] should not be dismissed for lack of standing. Because these defendants [were] wholly[-]owned affiliates of [the corporate defendant], in which plaintiffs were participants, and the copayment plan provisions [were] substantially the same, a single resolution of the dispute would be expeditious." *Id. See also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) (when a single defendant offers a range of ERISA plans, an individual in one plan can represent a class of plaintiffs -- including some belonging to other plans -- as long as "'the gravamen of the plaintiff's challenge is to the general practices [of the defendant] which affect all of the plans.'"); *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (although not using juridical link language, the Fifth Circuit reversed the district court's ruling that a plaintiff could not represent four separate ERISA plans administered by same defendant employing the same general practice that harmed the plans).

The rationale of the juridical link doctrine is wholly applicable in the mutual funds context, where the Funds' common corporate parents, common distributors and common investment advisers dominate and control the operations of the mutual funds they offer. There

are common contractual obligations to a large number of the mutual funds within the family of

Funds, and Defendants are alleged to have engaged in a common scheme of excessive fees,

including failing to pass along economies of scale, and entering into improper agreements with

brokers involving improper directed brokerage and soft dollar activity.  In addition, the Funds

predominately share a common Board of Directors, officers and employees of MFS who

administer the Funds and portfolios generally, and are not limited to individual Funds.

Individual Funds have no independent will and are dominated by MFS and the common body of

directors established by MFS.[13]  Under the juridical link doctrine, the Funds would be assured of

efficient and consistent treatment.  *See Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir.

1990) (While "[o]ther named plaintiffs could be supplied to match with each named defendant

[…] it would be unwieldy to do so. […] The case is simpler and more economical with the class

of plaintiffs and the named defendants.").

Even though the *Dumond* Plaintiffs argue that the statutory language of §36(b) requires a

derivative action, class cases are analogous and confirm the *Forsythe* Plaintiffs' ability in this

circumstance to sue on behalf of all the Funds without a plaintiff representative for each Fund.

Class case law confirms that the *Forsythe* Plaintiffs may represent all of the Funds in light of the

identical nature of the claims of the Funds against Defendants, the juridical links binding

Defendants to all the Funds, and the close interrelationship of all the Funds with each other.  *See*

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2000 U.S. Dist. LEXIS

13469 (S.D.N.Y. Sept. 19, 2000) (certifying named plaintiffs who invested in the Dreyfus

Aggressive Growth Fund to represent purchasers in the Dreyfus Premier Aggressive Growth

---

[13]     All the MFS Funds are essentially alter egos of one another.  The Funds are pools of investor assets
that are managed and administered by officers and employees of MFS, not by Fund employees who are independent
of MFS.  *See Tannenbaum v. Zeller,* 552 F.2d 102, 405-06 (2d Cir. 1977).

Fund); *Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071 (HB), 2003 U.S. Dist. LEXIS 11972, at *8

(S.D.N.Y. July 16, 2003) (rejecting defendant's argument that a class representative could not

represent all claims, based on the fact that the representative's claim "[arose] from the same

event or course of conduct [that gave] rise to claims of other class members and the claims

[were] based on the same legal theory"); *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D.

200, 208 (S.D.N.Y. 1995) (class representatives were not required to have invested in all limited

partnerships at issue, where complaint alleged a "uniform course of improper conduct and

standardized sales approach applied by defendants"); *Maywalt v. Parker & Parsley Petroleum*

*Co.*, 147 F.R.D. 51, 56-57 (S.D.N.Y. 1993) (plaintiffs who invested in three limited partnerships

could represent persons who had invested in two other limited partnerships, where the complaint

alleged that investors in all five limited partnerships were victims of a single pattern of fraud by

defendants).[14]

In order to advance their own monetary interests, the *Dumond* counsel argue to restrict,

instead of maximize, recovery for the injured MFS Funds.  The *Forsythe* Plaintiffs, however,

seek the maximum recovery for the maximum number of Funds and shareholders.  The attempt

by counsel for *Dumond* to reduce the number of Funds on whose behalf claims can be brought,

and essentially abandon those Funds where they do not have a shareholder client, evidences that

---

[14]    In the cases cited by the *Dumond* Plaintiffs, the plaintiffs, unlike the MFS Funds, did not have common claims against the defendants.  In *Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196 (S.D.N.Y. 1991), the court found that the plaintiffs lacked standing against certain defendants because those defendants did not do any work in connection with the limited partnerships at issue.  In the case at bar, however, the Defendants are common to all plaintiffs.  In S*pira v. Nick*, 876 F. Supp. 553 (S.D.N.Y. 1995), the plaintiff sought to have a receiver appointed for 25 entities.  The applicable statute on appointing a receiver specified that the movant must have an interest in the property and the court found that the plaintiff lacked standing for the 23 entities in which he had no ownership interest.  In *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64 (D. Conn. 1994), the standing issue focused on whether the plaintiff had suffered the requisite injury under RICO to bring the claim.  Finally, in *Nenni v. Dean Witter Reynolds, Inc.*, Civ. No. 98-12454-REK, 1999 U.S. Dist. LEXIS 23351 (D. Mass. Sept. 29, 1999), the court only addressed the standing issue regarding plaintiffs' §§ 11(a) and 12 claims.

their self-serving goal in this case is not to fight for the best interests of all those victimized by

Defendants, but rather to carve out a lead counsel position for themselves at all costs. The Court

should not reward such self-interested behavior.[15]

## POINT IV

## THERE ARE COMMON QUESTIONS OF LAW AND FACT PENDING BEFORE THE COURT MAKING CONSOLIDATION APPROPRIATE

The *Dumond* Plaintiffs argue that the *Dumond* claims and the *Forsythe* claims are

dissimilar and should not be consolidated. Even a cursory review of the complaints

demonstrates that this fallacious argument is no more than yet another attempt by the *Dumond*

counsel to find some way to distinguish their cases to get a lead counsel position for

themselves.[16]  All of the Actions, including *Dumond*, are based on common questions of law and

fact. The *Dumond* claims are subsumed in the Actions and should be consolidated with those

complaints. Federal Rule of Civil Procedure Rule 42(a) explicitly states that consolidation is

appropriate when there is "a common question of law or fact pending before the Court." *See*

*Storlazzi v. Bakey*, No. 95-1596, 1995 U.S. App. LEXIS 30146, at *4-5 (1st Cir. Oct. 24, 1995)

---

[15]    The *Forsythe* Plaintiffs have also asserted a derivative claim under Section 215 of the Investment Advisers Act. The *Dumond* Plaintiffs do not assert that claim, yet they provide no explanation of what would happen to that claim if they were the only ones to be able to pursue a derivative claim.

[16]    The *Dumond* Opposition attempts to distinguish the *Dumond* action from the *Forsythe* actions by stating that "the focus of the [*Forsythe* actions] is on the improper use of fund assets to make improper and undisclosed payments to securities brokers to aggressively push MFS funds on their customers over other funds from other companies." *Dumond* Memo at 16 (emphasis in original). This statement gives the false impression that the *Dumond* action does not allege improper, undisclosed payments to securities brokers to aggressively push MFS Funds, when in fact it does. *See Dumond* Compl. at ¶ 45. The *Dumond* Plaintiffs further argue that consolidation of the "complex" *Forsythe* actions with the more "streamlined" *Dumond* action is inappropriate. *Dumond* Memo at 15. In support of this argument, the *Dumond* Plaintiffs state that the *Forsythe* actions are brought against "numerous corporate and individual defendants, including twelve trustees." *Id.*  In truth, the *Forsythe* actions currently name only two corporate defendants – Massachusetts Financial Services Company (also named as a defendant in the *Dumond* action) and its parent company, Sun Life Financial, Inc – the same number of corporate defendants named in the *Dumond* action. Moreover, by the very terms of the *Dumond* and *Forsythe* complaints, all such actions will require close scrutiny of the MFS Funds' trustees and directors' approval of the MFS Funds Rule 12b-1 Plans, whether or not they have been named as defendants. *See, e.g.*, *Dumond* Compl. ¶¶ 17, 24, 27.

(reiterating that "[a] motion for consolidation will usually be granted unless the party opposing it can show 'demonstrable prejudice'").[17]  The standard under Rule 42(a) is clearly met here and the *Dumond* Plaintiffs have not shown any prejudice that would result from consolidation. Accordingly, the cases should be consolidated.[18]

Both the *Dumond* and *Forsythe* actions allege the payment of excessive fees.[19]  In fact, all allege that, although the amount of assets held by the Funds has increased dramatically over time, Defendants failed to pass on the resulting economies of scale to Plaintiffs, and have instead retained the excess profits, including advisory fees, resulting from the economies of scale.  The *Forsythe* Plaintiffs bring claims under § 36(b) of the Investment Company Act just like the *Dumond* Plaintiffs.  All of the claims of the *Dumond* Plaintiffs overlap with the claims of the *Forsythe* Plaintiffs.

However, in order to maximize the recovery for the injured shareholders, the *Forsythe* Plaintiffs vastly expanded on their allegations of excessive fees.  The *Forsythe* Plaintiffs allege that Defendants breached their fiduciary duties to both shareholders and the Funds through directed brokerage payments and improper use of "soft dollars."  The *Forsythe* Plaintiffs further allege that Defendants failed to properly supervise payments under the Funds' Rule 12b-1 plans. Finally, the *Forsythe* Plaintiffs allege that Defendants caused the Funds' prospectuses to fail to

---

[17]    In *Storlazzi v. Bakey*, the district court ordered the consolidation of three actions resting on "related violations […] against the same or related actors," although a new theory of liability was advanced in the most recent case and the plaintiff opposed consolidation on the basis that consolidation would prejudice his right to "just, speedy and inexpensive litigation."  *Storlazzi v. Bakey*, 894 F. Supp. 494, 499-500 (D. Mass. 1995).  The district court based its consolidation of the actions on "the interest of judicial economy and efficiency, and a concern over piece-meal litigation."  *Id.* at 500.

[18]    Consolidation is also appropriate under § 10.22 of the Manual for Complex Litigation (4th ed. 2004), which discusses consolidation of cases in the same court.

[19]    Despite the *Dumond* Plaintiffs' implication to the contrary, the *Forsythe* actions are explicitly excessive fees cases.  *Compare Forsythe* Compl. ¶¶ 3, 41, 43, 46, 47, 50-52,  *with Dumond* Memo at 16 ("the Forsythe Plaintiffs […] *now* seek to portray their case as an excessive fee case") (emphasis added).

properly disclose excessive fees, directed brokerage, and misuse of soft dollars and 12b-1 fees.

All of the actions, including the *Dumond* action, allege that substantially the same Defendants

harmed the Funds and their shareholders.  Once again, however, the *Forsythe* Plaintiffs go

further and name more defendants than *Dumond* in an effort to hold all of the wrongdoers,

including the MFS investment advisers, parent companies, and board of trustees, accountable for

their actions.  Thus, consolidation of the actions will best serve all of the MFS Funds and the

investing shareholders, since each shareholder and each Fund suffered the same harm from

Defendants and all of the claims should be consolidated into a single action.[20]

The *Dumond* Plaintiffs also argue that "[t]here is also the potential for conflict between

the *Dumond* Action and the *Forsythe* Actions because the *Dumond* Action requires a bench trial

[…] whereas the plaintiffs in the *Forsythe* Actions have demanded a jury trial."  *Dumond* Memo

at 18-19.  The *Dumond* Plaintiffs add that, "Consolidation of the class claims and derivative

claims makes no sense if the claims must be tried separately."  *Id.* at 19.  Courts have found that

the simultaneous prosecution of jury and bench trials is not grounds to deny a consolidation

motion.  In an action where it was "patent" that common questions of fact and law were

involved, but the defendants argued that the dual bench/jury trial posture of the cases would

present conflicts, the Southern District of New York stated the following:

> Such strategic conflicts -- potentially present whenever there are
> multiple defendants, regardless of whether the case is jury, non-
> jury, or both -- do not ordinarily constitute the kind of "prejudice"

---

[20]    The *Dumond* Plaintiffs have incorrectly argued that "[t]he *Forsythe* Plaintiffs' Memorandum is devoid of any discussion of how consolidation of these matters would benefit the parties as well as serve the interests of judicial convenience and economy."  *Dumond* Memo at 14.  This is incorrect.  *See Forsythe* Memo at 2, 18-19 (arguing, *inter alia*, that "[C]ounsel for Forsythe, Eddings, Koslow and Chicago expect that the intended consolidated amended complaint will seek to enjoin continuation of the wrongful conduct and seek relief for those who have actually suffered from the alleged misconduct, regardless of whether they still currently own the funds or not.  This will ensure that the plaintiffs in the Actions, including the *Dumond* Plaintiffs, will be fully compensated for their claims").

that impacts the fairness of the trial or otherwise weighs against consolidation.  Indeed, if it were otherwise, consolidation would be stillborn in every multi-defendant case.  In reality, however, multiple defendant jury and non-jury cases are routinely -- and fairly -- tried together without any actual prejudice to any party concerned.  There is nothing special about this case that warrants a contrary result.

*Golden Trade S.R.L. v. Lee Apparel Co.*, 90 Civ. 6291, 90 Civ. 6292, 90 Civ. 7815, 92 Civ. 1667, 1997 U.S. Dist. LEXIS 8924, at *7-8 (S.D.N.Y. June 24, 1997) (citing *In re Great Lakes Dredge & Dock Co.*, 895 F. Supp. 604, 615 (S.D.N.Y. 1995) (ordering simultaneous bench and jury trial in a consolidated multi-party action)).  Here, where it is also patent that common questions of fact and law exist, there is "nothing special" about this case that warrants a denial of consolidation on the grounds that jury and non-jury trials are possible.

## CONCLUSION

For the reasons detailed herein and in their prior submissions, Plaintiffs respectfully request this Court to:  (i) consolidate the Actions; (ii) appoint the *Forsythe* Plaintiffs (including Chicago) as Co-Lead Plaintiffs; (iii) appoint Milberg Weiss, Bernstein Litowitz, and Weiss & Yourman as Co-Lead Counsel; and (iv) appoint Moulton & Gans as Liaison Counsel.

Dated:  October 13, 2004

**MOULTON & GANS, P.C.**

By:   /s/ Nancy Freeman Gans
      Nancy Freeman Gans (BBO #184540)
33 Broad Street, Suite 1100
Boston, Massachusetts  02109-4216
(617) 369-7979

***Counsel for Plaintiffs Eric Forsythe and Larry R. Eddings and Proposed Liaison Counsel***

**MILBERG WEISS BERSHAD**
**  & SCHULMAN LLP**
Jerome M. Congress
Janine L. Pollack
Kim E. Levy
Michael R. Reese
One Pennsylvania Plaza
New York, New York  10119-0165
(212) 594-5300

*Counsel for Plaintiff Eric Forsythe and Proposed*
*Co-Lead Counsel*

**BERNSTEIN LITOWITZ BERGER**
**  & GROSSMANN LLP**
Alan Schulman
Robert S. Gans
Timothy A. DeLange
Jerald D. Bien-Willner
12544 High Bluff Drive, Suite 150
San Diego, CA 92130
(858) 793-0070

*Counsel for Plaintiff Chicago Deferred*
*Compensation Plan and Proposed Co-Lead*
*Counsel*

**WEISS & YOURMAN**
Joseph H. Weiss
Richard Acocelli
551 Fifth Avenue, Suite 1600
New York, New York  10176
(212) 682-3025

*Counsel for Plaintiff Larry R. Eddings and*
*Proposed Co-Lead Counsel*

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland  21202
(410) 332-0030

*Counsel for Plaintiff Eric Forsythe*

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York  10017
(212) 687-7230

*Counsel for Plaintiff Larry R. Eddings*

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
Three Bala Plaza East
Suite 400
Bala Cynwyd, Pennsylvania  19004
(610) 667-7706

*Counsel for Plaintiff Richard Koslow*

**GILMAN AND PASTOR LLP**
David Pastor (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts  01906
(781) 231-7850

*Counsel for Plaintiff Richard Koslow*

## <u>CERTIFICATE OF SERVICE</u>

I, Susan M. Greenwood, hereby certify that I served a copy of the foregoing document upon counsel for all parties by mailing a copy of the same, postage prepaid, to each attorney of record, this 13th day of October, 2004.

                \_\_/s/ Susan M. Greenwood\_\_\_\_

                   Susan M. Greenwood